Arnold CRESON, Appellant,

v.

Ida Sisk SCOTT et al., Appellees.

Court of Appeals of Kentucky.

March 15, 1957.

As Modified on Denial of Rehearing June 21, 1957.

L. B. Weir, Madisonville, for appellant.

Moore & Morrow, Madisonville, for appellees.

CULLEN, Commissioner.

Arnold Creson brought action against members of the Sisk family to recover damages for breach of an implied warranty of quiet enjoyment and possession under a coal mining lease which the Sisks had executed to one Newman and which Creson alleged had been assigned to him. The case was submitted to a jury, which returned a verdict for the defendants. Creson appeals from the judgment entered upon the verdict, asserting several grounds of error.

Upon a former appeal, Creson v. Scott, Ky., 275 S.W.2d 406, it was held that Creson's complaint stated a cause of action against the Sisks. The complaint alleged, in substance, that Creson was the assignee of

the lease to Newman, and that the Sisks had executed a subsequent lease to a coal company, whose agents, acting under the subsequent lease, had evicted Creson from the premises. Damages were sought for loss of profits by reason of being prevented from mining coal during a favorable market period.

Our question on this appeal is whether Creson sustained the allegations of his complaint by sufficient proof, particularly as to his being an assignee of the lease during the period for which damages were sought.

For the purposes of this opinion the following facts may be considered as established. In March 1945 the Sisks executed a coal lease to Newman, for a 10-year term, covering both deep-mine coal and strip coal on the Sisk farm of 235 acres. Newman entered upon the land and commenced mining the deep-mine coal, taking it to market by trucks over a road which passed through the lands of other persons to the main highway. In September 1945 the Sisks executed a second lease to a coal company, for a 30-year term, covering the coal on the Sisk farm. In December 1945 Newman made a written agreement with Creson under which Creson was to have an assignment of the Newman lease as it related to strip coal only, provided that Creson, within a 90-day period allowed for test-drilling, decided to accept the assignment. Creson went on the land and did test-drilling, and in March 1946 (within the 90-day period), notified Newman that he would accept the assignment. It was not contemplated by Newman and Creson that any further paper, other than their original written agreement, would be necessary to effectuate the assignment. However, Creson's acceptance of the assignment was qualified, as will be developed at a later point in this opinion.

About the time that Creson finished his test-drilling, agents of the coal company blocked the road over which Newman had been hauling his deep-mine coal, and refused to permit any of Newman's trucks to use the road. Because of this fact, and because of the existence of the second lease to the coal company, Creson did not attempt to move any strip-mining equipment onto the Sisk land. In September 1947 Newman brought an action against the Sisks and the coal company, seeking a declaration that his lease was superior to the coal company lease, and an injunction against interference with his use of the road. This action lingered on the docket until October 1951, when judgment was entered granting Newman the relief sought. In the meantime neither Newman nor Creson had made any effort to mine the strip coal. When the judgment was entered, Newman advised Creson that he could now proceed with his strip mining operation, but Creson declined, for the reason that the market for coal was not then favorable.

Creson's present suit is for the profits he lost by being prevented from mining the coal in 1946 and 1947, when the market was good.

We think the controlling factor in this case is the qualification which Creson attached to his acceptance of the assignment of the Newman lease. The transcript of Creson's testimony shows the following questions and answers:

"Q. Did you tell him (Newman) you did want it at the end of ninety days? A. If he could get the lease cleared.

\* \* \* \* \* \*

"Q. \* \* \* Within that time limit, did you tell him (Newman) you weren't going to take it? A. I told him I wasn't going to take it until he got the title cleared up."

\* \* \* \* \* \*

"Q. Did you tell him you weren't going to take it sometime close to when that 90 days was running out? A. I told him I wasn't going to take it until they got the lease cleared up.

\* \* \* \* \* \*

"Q. When did you tell him you weren't going to take it, Mr. Creson? A. I didn't tell him I wasn't going to take it. I told him when he got the thing cleared up.

"Q. What you testified here under oath is untrue? A. I never did tell him I wasn't going to take it. I never told nobody I wasn't going to take it. I told him I wasn't going to take it until they got it cleared up.

\* \* \* \* \* \*

"Q. I will ask you if you were asked this question and made this answer: 'When that happened, you were through with the lease?' Answer: 'I turned it back to him. If he had got the thing straightened out within the next month or two, of course, I would have went on with it.' Were you asked that question and did you make that answer? A. Yes, sir.

"Q. What did you mean, you had to have a new one (contract)? A. They had to furnish me with a new contract to keep somebody off my back. That is all.

"Q. Do what? A. Newman would have to clear the thing up and furnish me with something or other to keep this other coal company and all off of my back.

\* \* \* \* \* \*

"Q. Mr. Morrow has asked you about the option period in your assignment; say whether or not within that option period you did tell Mr. Newman you would mine the coal? A. I sure did, if he would get the thing cleared up; I wanted to mine it."

Newman, at one point in his testimony, said: "He (Creson) told me he would take it when the title was cleared up. That is what Mr. Creson told me."

We think that no reasonable conclusion can be reached from the foregoing testimony other than that Creson did not, in 1946, make an unconditional acceptance of the assignment such as to then vest in him the rights of Newman as lessee, including the right of quiet enjoyment and possession. Creson said he told Newman he would take the assignment "if" or "when" Newman "got the thing cleared up." It is true that both Newman and Creson testified it was their agreement and understanding that Creson could proceed as soon as the title was cleared up, and that Newman could not assign the lease to another without Creson's consent, but this means nothing more than that Creson's option to accept the assignment was continued during the period necessary to clear up the title.

Creson's action here is based upon an alleged breach of an implied warranty of quiet enjoyment and possession, running to him. The simple fact is that Creson never attempted or undertook to enter upon or enjoy the premises. When the road was blocked against the Newman trucks, Creson announced that he would not take the assignment until "the thing was cleared up." If Creson sustained a loss of profits it was because he was discouraged by the closing of the road from entering into a final contract with Newman, and not because the closing of the road prevented him from enjoying any rights he had acquired under a contract. Creson cannot complain of the fact that the actions of the Sisks made Newman's lease so unattractive that Creson decided not to take it.

The fact that Newman alone brought the action in 1947 against the Sisks and the coal company is indicative that he and Creson did not think there had been a completed assignment to Creson.

It is our opinion that the defendants were entitled to a directed verdict. Accordingly, the alleged errors asserted by the plaintiff were not prejudicial.

The judgment is affirmed.